IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MILLENIUM OUTDOORS LLC,

                    Plaintiff,

  v.

LEADER ACCESSORIES, LLC,

                    Defendant.

OPINION and ORDER

23-cv-106-jdp

---

      Plaintiff Millenium Outdoors has prevailed by default on its claims that defendant Leader Accessories, LLC infringed its design patents and trade dress in a folding boat seat. After receiving the parties' documentary evidence, the court ruled from the bench that Millenium Outdoors was entitled to $78,094.05 in damages, attorney fees, and a permanent injunction to prevent further infringement. Dkt. 121 (transcript of hearing).

      Two issues are before the court. First, Leader Accessories has filed several objections to the court's draft injunction, which the court will mostly overrule. Second, Millenium Outdoors has filed a petition for its attorney fees and costs, which Leader Accessories objects to as excessive. The court concludes that the requested fees and costs are reasonable and adequately supported, so it will grant Millenium Outdoors the full amount requested.

ANALYSIS

**A. Injunction**

      The court concluded at the end of the hearing on default judgment that Millenium Outdoors is entitled to a permanent injunction to prevent Leader Accessories from infringing its design patents and trade dress in its folding boat seat. The court circulated a draft

injunction, Dkt. 120, and Leader Accessories submitted five objections, which the court will address in turn.

First, Leader Accessories contends that the injunction improperly binds non-party Easepal Enterprises, an affiliate of Leader Accessories that manufactures the infringing boat seats. Under Federal Rule of Civil Procedure 65(d), an injunction binds the parties, the parties' officers, agents, servants, employees, and attorneys, and other persons "who are in active concert with" any of the above, if those individuals receive actual notice of the injunction by personal service or otherwise. But "it does not follow that a litigant's affiliates may be named in an injunction." *Lake Shore Asset Mgmt v. CFTC*, 511 F.3d 762, 766 (7th Cir. 2007). When an entity is named as a defendant, the injunction "may direct [that entity] to do things within its power . . . but [it] may not impose obligations directly on other members of the corporate group." *Id.* at 767.

Leader Accessories is correct that the court may not impose obligations directly on Easepal because it is not a party to this case. *See* Dkt. 67 (order denying Easepal's motion to intervene). But all the draft injunction does is require Leader Accessories "to provide a copy of this order" to Easepal; it doesn't actually require Easepal to do anything. The court sees no reason to remove this requirement. It is justified in light of the repeated failure of Easepal's managers and employees to provide satisfactory answers to basic questions such as when they learned about this lawsuit. *See generally* Dkt. 35 (discussing Easepal employee Matthew Wu's inadequate explanation of when he received notice of the lawsuit); Dkt. 67 (discussing Easepal's failure to explain whether it had communicated with Leader Accessories about this lawsuit).

The court will, however, adjust the injunction's wording to clarify that the court is not deciding whether the injunction binds Easepal under Rule 65(d)(2). As the court explained in its order on the motion to intervene, if Millenium Outdoors wants to enforce the injunction against Easepal, it will have to show that Easepal either aids or abets or is in privity with Leader Accessories, and Easepal will be entitled to notice and an opportunity to be heard. Dkt. 67, at 6–7. The draft injunction states that Leader Accessories must notify all persons in active concert or participation with it, "*including but not limited to* Leader Accessories' affiliate Easepal Enterprises Limited," which could imply that the court is making a finding of active concert or participation. Dkt. 120, at 4 (emphasis added). To clarify that it is not deciding that issue, the court will revise the relevant paragraph as follows:

> Defendant Leader Accessories LLC and its counsel shall provide a copy of this order to every officer, agent, servant, employee, and attorney of Leader Accessories, including but not limited to Richard Chen, Matthew Wu, and Jeffrey Chen, and to any other persons who may be in active concert or participation with Leader Accessories or with its officers, agents, servants, employees, or attorneys. Leader Accessories and its counsel shall also provide a copy of this order to Leader Accessories' affiliate Easepal Enterprises Limited. The court takes no position as to whether Easepal is an agent of Leader Accessories or is in active concert or participation with Leader Accessories under Federal Rule of Civil Procedure 65(d)(2).

Second, Leader Accessories argues that the injunction impermissibly extends beyond the term of Millenium Outdoors' design patents, which expire on April 21, 2029. *See* Dkt 1-1 and Dkt. 1-2. The court agrees that Paragraphs 6 through 11 of the injunction, which protect only Millenium Outdoors' design patents, should expire when the patents do. *See Midtronics, Inc. v. Aurora Performance Prods. LLC*, 800 F. Supp. 2d 970, 973 (N.D. Ill. 2011); *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, No. 07-CV-229-BBC, 2008 WL 4756498, at *4 (W.D. Wis. Oct. 29, 2008), *vacated on other grounds*, 395 F. App'x 709 (Fed. Cir. 2010). But the court

will not impose a time limit on the remaining portions of the injunction, which protect Millenium Outdoors' trade dress.

Leader Accessories contends that the trade dress protection should also be time limited because a patent owner cannot "extend[] the exclusivity" of its patent by asserting that the same features that comprised its patent are its trade dress. Dkt. 122, at 9. But that contention is foreclosed by *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 638 (7th Cir. 1993) and by *W.T. Rogers Co. v. Keene*, 778 F.2d 334, 337 (7th Cir. 1985), which held that the statute authorizing 14-year design patents does not prevent a party from also enforcing a trademark in a design feature. *See Kohler,* 12 F.3d at 638 ("a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property"). The cases Leader Accessories cites for the opposite view are not instructive. The courts in those cases did not deny trademark protection on a categorical basis because plaintiffs had a patent; they denied it because plaintiffs hadn't established the necessary elements for trademark protection. *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256 (1945) (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 117–20 (1938) and citing *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185 (1896), which held that a company's product name was not distinctive because it had become a generic descriptor for the product during the term of the company's exclusive patent); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1579–80 (Fed. Cir. 1995) (trade dress was functional). In this case, Millenium Outdoors has established trade dress protection by virtue of Leader Accessories' default. That protection is permanent as long as the trade dress is used to distinguish and identify Millenium Outdoors' product. *Kohler,* 12 F.3d at 637.

Third, Leader Accessories objects to the following portions of the injunction as impermissibly vague under Rule 65(d):

4

- The prohibition on manufacturing, importing, distributing, or selling "any product that imitates Millenium's protected trade dress." Dkt. 20, ¶ 2.

- The prohibition on "facilitating" third-party infringement. *Id.* ¶¶ 4, 8, 11.

- The prohibition on products that are "colorable imitations" or "confusingly similar" to Millenium Outdoors' trade dress. *Id.* ¶ 3.

- The prohibition on products "derived" from the infringing boat seat. *Id.* ¶¶ 7, 10.

Leader Accessories concedes that these are terms of art in patent and trademark law. But it argues that using these terms in the injunction amounts to an impermissible order to obey the law, which violates the equitable principle that an injunction should prohibit no more than the violation established in the litigation and similar conduct reasonably related to the violation. *See EEOC. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013). The court disagrees. The injunction is properly targeted at Leader Accessories' infringing boat seat and similar products. It does not describe every way that Leader Accessories could infringe, but "the Rule does not require the impossible . . . Rule 65(d) does not require a torrent of words when more words would not produce more enlightenment about what is forbidden." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431–32 (7th Cir. 1985) (declining to invalidate an injunction prohibiting any "colorable imitation" of an infringing trademark). Leader Accessories does not propose alternative language, and the court concludes that these terms are sufficiently precise given the inherent impossibility of prohibiting specific acts of future infringement.

Fourth, Leader Accessories asserts in conclusory fashion that the injunction bars a broad range of otherwise legal activity. But it doesn't point to any specific portions of the injunction that bar legal activity, nor does the court see any. The injunction prohibits Leader Accessories from continued infringement of Millenium Outdoors' design patents and trade dress, which is not legal activity.

Fifth, Leader Accessories asserts that the injunction lacks a territorial limitation, so it "potentially prohibit[s] Leader Accessories from engaging in legitimate activities outside the United States." That's not accurate. Each paragraph in the injunction explicitly states that Leader Accessories is prohibited from engaging in certain activities "in the United States," so the injunction cannot be reasonably interpreted as prohibiting Leader Accessories from engaging in legitimate activities abroad.

In sum, the court will adjust the injunction to add a time limit to the patent protections and to clarify that it is not deciding whether Easepal Enterprises Limited is in active concert with Leader Accessories. The remainder of the injunction will remain as is.

## B. Attorney fees

The court has determined that Millenium Outdoors is entitled to its reasonable attorney fees in this action under 35 U.S.C. § 285 and 15 U.S.C. § 1117. The reasonableness of attorney fees is determined using the lodestar method, multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). Millenium Outdoors has requested $355,169.25 in fees, which reflects 770.55 hours billed by attorneys at two law firms. Dkt. 124. Lead counsel at each firm submitted billing records and declarations explaining the basis for their hourly rates and confirming that all the fees in the billing records were billed to Millenium Outdoors. Dkt. 125 and Dkt. 126. Counsel also confirmed that Millenium Outdoors has actually paid all the fees through October 31, 2025, and that counsel expects Millenium Outdoors to promptly pay the remaining fees when they come due. *Id.*

Leader Accessories does not object to counsel's hourly rates, but it contends that the number of hours counsel expended on this case was excessive. Leader Accessories asserts that

6

the billing records reveal substantial duplicative work, excessive internal conferences and communications, and excessive time spent on routine matters such as filing documents and reviewing court orders. To support its arguments, Leader Accessories compiled a lengthy document that appears to be a list of all the time entries involving internal communications between counsel. Dkt. 130-2.

There may be room to debate whether all the internal communications and time spent drafting and reviewing documents were absolutely necessary. But courts review fee petitions for reasonableness, not perfection. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). Leader Accessories offers only general criticisms of counsel's time entries; it doesn't identify any specific entries or sets of entries to support its allegations of duplicative work and excessive internal communications. Nor does the court's own review suggest that counsel's conferences were unnecessary, extended, or over-staffed, or that counsel engaged in duplicative work.

The essence of Leader Accessories' opposition is that 770 hours is an unusually large amount of time to spend on a default case in which compensatory damages were less than $30,000. On that point, the court agrees. But the court of appeals has repeatedly rejected a rule that attorney fees are necessarily unreasonable if they are greater, even significantly, than the plaintiff's damages. *E.g., Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009); *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991). This case required substantially more work than a typical default case and the blame for that rests almost entirely with Leader Accessories, who litigated this case from the beginning in a manner intended to obfuscate and delay. In the early stages of this case, Leader Accessories concealed the location of its principal place of business and denied receiving any information about the

7

lawsuit for months. As a result, Millenium Outdoors had to go to substantial lengths to serve Leader Accessories and to demonstrate that it had in fact known about this lawsuit from the beginning. *See* Dkt. 35 (describing Leader Accessories' deceptive behavior before and after entry of default). Even after the court denied the motion to set aside the default, Leader Accessories continued to engage in tactics to get around the default: its close affiliate Easepal Enterprises moved to intervene (without providing good cause for waiting nearly two years to do so), and then Leader Accessories moved to stay the case less than two weeks before trial to allow the U.S. Patent and Trademark Office to reexamine the parties' design patents. Dkt. 67 and Dkt. 90.[1] Leader Accessories' own behavior drove up the litigation costs in this case, so it cannot object to Millenium Outdoors' counsel doing what is necessary to prevail. *See BCS Servs., Inc. v. BG Investments, Inc.,* 728 F.3d 633, 642 (7th Cir. 2013) (declining to reduce fees when "[t]he defendants were hyperaggressive adversaries" and "drove up the plaintiffs' legal costs without justification").

Leader Accessories also contends that the fee award should be reduced because of block billing in counsel's time sheets, particularly in the records from the Bradley firm. *See* Dkt. 130-1 (Leader Accessories' compilation of Millenium Outdoors' block billing entries). Block billing does warrant close inspection, but it is not a prohibited practice. *Farfaras v. Citizens Bank & Trust of Chi.,* 433 F.3d 558, 569 (7th Cir. 2006). Here, the court does not see the block billing as problematic, because none of the examples that Leader Accessories points to suggest that counsel's billing practices are concealing non-recoverable fees. Most of the examples include

---

[1] Easepal and Leader Accessories share the same leadership and the same counsel. *See* Dkt. 67. Leader Accessories does not contend in its opposition to the fee petition that the fees necessary to respond to Easepal's motion are non-compensable, so the court will not consider that issue.

8

closely related tasks that represent components of a single, larger task; many of them list within the billing entry the amount of time that counsel spent on different components of the task; and all of them are thoroughly described. Dkt. 130-1.

Ultimately, "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1183 (7th Cir. 2020) (quoting *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008)). Millenium Outdoors has paid the requested fees, and the court's review did not suggest that the fees were unreasonable as a general matter. The court will grant Millenium Outdoors' petition and award the full $355,169.25 in fees.

## C. Costs

Millenium Outdoors also requests $19,926.91 in costs. Leader Accessories does not object to any of the taxable costs under 28 U.S.C. § 1920. But it objects to Millenium Outdoors' requests for $1,672.70 in legal research costs and for $1,513.09 in travel costs, which are not recoverable under § 1920 and which Leader Accessories says are not recoverable under 35 U.S.C. § 285 either.

Computerized legal research costs are recoverable only as part of an award of attorney fees, not as costs. *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121 (7th Cir. 2023). If a party is entitled to attorney fees, legal research costs are recoverable only if the party shows that counsel billed for legal research separately from its hourly rate. *Mowery v. Metro. Life Ins. Co.*, No. 16-cv-516-jdp, 2017 WL 3575857 (W.D. Wis. Aug. 18, 2017). Here, the Bradley firm's records and Attorney Gipson's declaration show that the firm consistently billed its legal research costs to Millenium Outdoors and that Millenium Outdoors paid those costs. Dkt. 125 and Dkt. 125-2. So the court concludes that these are recoverable under 35 U.S.C. § 285 and

9

15 U.S.C. § 1117. Although the parties describe them as costs, the court will shift them into the fee award to reflect the Seventh Circuit's view that they are fees.

As for the travel expenses, § 285 permits the prevailing party to recover disbursements that were necessary for the case. *Third Wave Techs., Inc. v. Stratagene Corp.*, No. 04-c-0680-c, 2006 WL 517629, at *4 (W.D. Wis. Feb. 21, 2006) (citing *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1069 (Fed. Cir. 1983)). That includes meals while travelling or otherwise on the job. *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. LTD*, No. 20-cv-19-jdp, 2025 WL 1793313, at *2 (W.D. Wis. June 30, 2025). The court is persuaded that Attorney Gipson's trips to meet with his client for deposition preparation and to attend the final pretrial conference were necessary, so it will not deduct the travel and meal costs associated with those trips.

Finally, Leader Accessories argues that Millenium Outdoors failed to provide affidavits to support its costs pursuant to 28 U.S.C. § 1924, which states the following:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Leader Accessories is correct that counsel for Millenium Outdoors did not submit affidavits in support of its costs. But it did submit declarations from lead counsel at both firms stating under penalty of perjury that the billing records and costs submitted with the fee petition were accurate. Dkt. 125 and Dkt. 126. This court and others have repeatedly held similar declarations to satisfy the purpose of § 1924. *Donohoo v. Hanson*, No. 14-cv-309-wmc, 2017 WL 1250437 (W.D. Wis. Apr. 4, 2017); *Hardwick v. Sunbelt Rentals, Inc.*, 2010 WL 3270053, at *2 (C.D. Ill. 2010); *Kristofek v. Vill. of Orland Hills*, No. 11 C 7455, 2014 WL 7145543, at *2 (N.D. Ill. Dec. 15, 2014).

ORDER

IT IS ORDERED that:

1. In accordance with *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 922–23 (7th Cir. 2019), a permanent injunction is set forth in a separate document.

2. Plaintiff Millenium Outdoors, LLC, is awarded $356,841.95 in attorneys' fees and $18,254.21 in costs.

3. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered January 12, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge